## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **PAM KINCAID,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:14CV00027 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **JAMES W. ANDERSON, ET AL.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendants. | ) | |

*Melvin E. Williams and Micah D. Wright, Mel Williams PLC, Roanoke, Virginia, for P1aintff; Henry S. Keuling-Stout, Keuling-Stout, P.C., Big Stone Gap, Virginia, for Defendants Russell County Department of Social Services, Board of the Russell County Department of Social Services, Harry Ferguson, Roger Brown, Laurel Rasnick, Bill Hale and Rebecca Dye.*

In this employment discrimination case, certain of the defendants have moved to dismiss the plaintiff's First Amended Complaint. The plaintiff claims that she was discriminated against by her employer based on her gender and religion, and retaliated against for complaining about such discrimination, including being demoted. She asserts a number of federal and state law causes of action, including violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Family and Medical Leave Act ("FMLA"), defamation, intentional infliction of emotional distress, and due process violations of her property and liberty interests.

The defendants Russell County Department of Social Services (the "Department"), the Board of the Russell County Department of Social Services (the "Board"), and the named Board members themselves (the "Board Members"), move for dismissal on a number of grounds, including sovereign immunity, failure to state a claim, the statute of limitations, and qualified immunity.[1] For the following reasons, I will deny the motion as to the Title VII claims against the Department and the Board, but grant the motion as to the remainder of the plaintiff's claims against these defendants.[2]

## I.

The essential facts as alleged in the First Amended Complaint,[3] which I take as true solely for purposes of the Motion to Dismiss; are as follows. The plaintiff, Pam Kincaid, a supervisor at the Department, claims she was harassed on the basis of gender and religion by the Department's director, James W. Anderson, from the time he was hired in January 2012. According to Kincaid, Anderson demeaned her by demanding acts of subservience that he did not ask of others, and by making

---

[1]    Russell County was also a defendant, but I previously granted its motion to dismiss all claims against it on the grounds of sovereign immunity and failure to state a claim.

[2]    I will dispense with oral argument because the facts and legal contentions have been adequately presented in the materials before the court and oral argument would not significantly aid in the decisional process.

[3]    For ease of reference, I will hereafter refer to the First Amended Complaint as the "Complaint."

malicious remarks about her Catholic faith and her gender. For example, Anderson would refer to Kincaid as a prostitute, and state that he was going to "turn her into a southern woman." (Compl. 5, ECF No. 43.) Further, Anderson sabotaged Kincaid's job performance by berating her in front of work colleagues, denying her resources needed to do her job, and contravening her authority over subordinates. Although Kincaid complained repeatedly to Anderson, his behavior continued.

The conflict culminated in May 2012, when Anderson requested that the Board fire Kincaid, claiming that several co-workers and local attorneys had complained about her unprofessional conduct. At the time, Kincaid was on medical leave due to a serious medical condition, and she was not given notice of the hearing or an opportunity to be heard. Based on Anderson's accusations, the Board demoted Kincaid from supervisor to social worker. After Kincaid demonstrated that the complaints against her were false, the Board reinstated her, but allowed Anderson to remain her supervisor. It is claimed that Anderson's unprofessional behavior toward Kincaid continued until he resigned from his position as director in September 2013.

As a result of the demotion, Kincaid suffered reduced wages as well as depression and suicidal thoughts. After timely filing a charge with the Equal Employment Opportunity Commission and having received an issuance of the

right to sue, Kincaid filed suit in this court on January 22, 2015, against numerous defendants, including the Department, the Board, and the Board Members. These defendants now move for dismissal of the claims against them.

## II.

In order to survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679.

In the context of employment discrimination claims, "a plaintiff is not required to plead facts that constitute a prima facie case" in order to survive a motion to dismiss. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Swierkiewicz v. Sorema* NA., 534 U.S. 506, 510-15 (2002)). Nevertheless, a complaint's "[f]actual allegations must be enough to raise a right to

relief above the speculative level." *Coleman*, 626 F.3d at 190 (quoting *Twombly*, 550 U.S. at 555). Although a complaint need not contain detailed factual allegations, it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The defendants move to dismiss the plaintiff's claims against them on a variety of grounds. Because I find that the Department and the Board, as well as the Board Members in their official capacities, are entitled to sovereign immunity, I will dismiss the state law claims, due process claims, and the FMLA claim on that basis. Further, I will dismiss the state law claims and the due process claims against the Board Members for failure to state a claim.[4] However, I find that the plaintiff has adequately stated Title VII claims against the Department and the Board to survive the Motion to Dismiss.

## A. Sovereign Immunity.

Because I find that sovereign immunity disposes of most of the plaintiff's claims, I will begin with that analysis. Pursuant to the Eleventh Amendment to the United States Constitution, the Supreme Court has "consistently held that an unconsenting State is immune from suits brought in federal courts by her own

---

[4] Although the Complaint names the Board Members as defendants without any further clarification, the plaintiff asserts in her Opposition to the Motion to Dismiss that she intended to sue the Board Members in both their official and individual capacities.

citizens as well as by citizens of another State." *Edelinan v. Jordan*, 415 U.S. 651, 662-63 (1974). Sovereign immunity "is not limited to states as such, but also applies to an agency that acts as an 'arm of the state.'" *Nelson v. Herrick*, No. 3:11-cv-00014, 2011 WL 5075649, at *8 (W.D. Va. Oct. 26, 2011) (quoting *Cash v. Granville Cty. Bd. of Educ.*, 242 F.3d 219, 224 (4th Cir. 2001)). By contrast, local entities are distinct from arms of the state, and "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief . . . [if the] action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Nelson*, 2011 WL 5075649, at *8 (quoting *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690 (1978)).

Therefore, the initial question is whether the Department, the Board, and the Board Members in their official capacities are considered to be arms of the state, and thus entitled to sovereign immunity. In this inquiry, the court must "determine whether, under state law, the entity functions 'more like a county or municipality than like an arm of the State itself.'" *Nelson*, 2011 WL 5075649, at *9 (quoting *Cash*, 242 F.3d at 224). Under Virginia law, local social service boards and their corresponding departments administer social services locally, "[s]ubject to the supervision of the Commissioner [of Social Services] and in accordance with the regulations passed by the State Board" of Social Services. *Fields v. Prater*, 566

F.3d 381, 383 (4th Cir. 2009).  Both the State Commissioner and the members of the State Board are appointed by the Governor.  Va. Code Ann. §§ 63.2-201, - 215. The State Commissioner "supervises the administration of social services throughout the state," and the "State Board advises the Commissioner, but also has the power to pass regulations which are binding throughout the state and which the Commissioner must enforce."  *Fields*, 566 F.3d at 383 (citing Va. Code Ann. §§ 63.2-203, -216, -217).

In short, Virginia state law "requires local departments of social services to perform their child welfare services subject to the direction of the State Commissioner of Social Services in accord with regulations adopted by the State Board of Social Services."  *Doe v. Mullins*, No. 2:10CV00017, 2010 WL 2950385, at *1 (W.D. Va. July 22, 2010).  For this reason, I found in *Mullins* that, with regard to the Wise County Department of Social Services, the "high degree of control exercised by the Commonwealth and corresponding lack of autonomy by the local departments, support the determination that [the department of social services] is properly characterized as an arm of the state, at least in its role of protecting children."  *Id*.; see also *Perry v. Carter*, No. CIVA297-CV-893, 1998 WL 1745365, at *8 (E.D. Va. July 27, 1998) (finding local social service agency was entitled to sovereign immunity, on grounds that Commonwealth maintained "a high degree of control," that "state law treats the local agencies as an arm of the

state," and "the focus of the prevention of child abuse and neglect pursuant to state policy").

The same reasoning applies with equal force here, and I find that the Board, the Department, and the Board Members in their official capacities are entitled to sovereign immunity from suit.[5]  See *Nelson*, 2011 WL 5075649, at * 11 (finding local social services department, social services board, and employees named in their official capacity all entitled to sovereign immunity); *Daley v. Ferguson*, No. 3:95CV304, 1995 WL 17955326, at *3 (E.D. Va. June 26, 1995) (same).

This sovereign immunity extends to any negligence or intentional tort claims arising out of the actions of any of the entity's agents including the defamation and intentional infliction of emotional distress claims brought in this case,[6]  *Miller v.*

---

[5]  Kincaid contends that under prior court rulings, Virginia's local social services departments enjoy sovereign immunity solely in their capacity of protecting children, not when they act in the role of employer.  However, I fail to see the distinction in this case. The Board's decisions with regard to Kincaid were based entirely on its perception of her ability to perform her position as social work supervisor, which goes to the heart of the Department's mission to protect children.

[6]  An additional ground for dismissal is that Kincaid's factual allegations do not meet the threshold required for a claim of intentional infliction of emotional distress.

> Intentional infliction of emotional distress is a highly disfavored claim in the Fourth Circuit; in fact, to state a viable claim under that theory, a plaintiff must meet the high burden of showing that: (1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous or intolerable; (3) there was a causal connection between the defendant's conduct and the plaintiffs emotional distress; and (4) the resulting emotional distress was severe.

*Parrish*, No. 3-12CV873-HEH, 2013 WL 791241, at *3 (E.D. Va. Mar. 4, 2013); see also *Ghayyada v. Rector & Visitors of Univ. of Va.*, No. 3:11-cv-00037, 2011 WL 4024799, at *5 (W.D. Va. Sept. 12, 2014) (dismissing defamation claim against state university on basis of sovereign immunity); *Gedrich v. Fairfax Cty. Dep't of Family Servs.*, 282 F. Supp. 2d 439, 474 (E.D. Va. 2003) (dismissing claim of intentional infliction of emotional distress against county social services department on sovereign immunity grounds). Therefore, sovereign immunity bars Kincaid's state law tort claims against the Department, the Board, and the Board Members in their official capacities. Further, these defendants are entitled to sovereign immunity from Kincaid's due process claims pursuant to 43 U.S.C. § 1983. See *Mullins*, 2010 WL 2950385, at *1 (dismissing § 1983 claims against local social services agency on sovereign immunity grounds).[7]

---

*Weth v. O'Leary*, 796 F. Supp. 2d 766, 774 (E.D. Va. 2011). Employment discrimination cases often will not meet this high standard, and the facts alleged here are insufficient to justify an exception. See *Harris v. Norfolk & W. Ry. Co.*, 720 F. Supp. 567, 568 (W.D. Va. 1989) (noting that, to prove intentional infliction of emotional distress under Virginia law, "[a]n employee must show that the employer's conduct was so outrageous in character, and so extreme in degree, as to be beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community") (internal quotation marks and citations omitted). This reasoning equally applies to all defendants, including the Board Members in their individual capacities.

[7] In addition, Kincaid's federal due process claims fail because the facts in the Complaint fail to allege that the actions of the Department, the Board or its members in their official capacities represented an official policy or custom by a designated policymaking authority. *Bockes v. Fields*, 999 F.2d 788, 791 (4th Cir. 1993). In *Bockes*, a local social services employee filed suit against her local social services department and board pursuant to § 1983, claiming that she was terminated in violation of her due

-9-

Additionally, these defendants are entitled to sovereign immunity as to Kincaid's claims under the FMLA.[8]  Although Kincaid did not allege which specific FMLA provision was violated, the facts in the Complaint indicate that she may have taken leave for a serious medical condition pursuant to the FMLA's self-care provision.  The Supreme Court has held that state government bodies enjoy sovereign immunity from claims based on the FMLA's self-care provision. *Coleman v. Md. Court of Appeals*, 132 S. Ct. 1327, 1332 (2012).

By contrast, Title VII abrogated sovereign immunity, and thus Kincaid's Title VII claims cannot be dismissed on this basis. *Blankenship v. Warren Cty., Va.*, 931 F. Supp. 447, 449 (W.D. Va. 1996) (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976)).

---

process rights.  The Fourth Circuit noted that "[i]n Virginia, neither the County nor the local boards have authority to set general goals and programs for social services personnel; that authority is reserved for the State Board." *Id.* (internal quotation marks omitted).  The court concluded that the local social services agency "enjoy[s] its discretion to fire [the plaintiff] at the prerogative of and within the constraints imposed by the Commonwealth," and that "[s]uch bounded, state-conferred discretion [to terminate the plaintiff] is not the 'policymaking authority' for which a [local entity] may be held responsible under § 1983." *Id.*  Such reasoning also applies to Kincaid's demotion, which cannot be reasonably construed as an "official policy or custom" of the Board or the Department.

[8]  To clarify, Kincaid brings Title VII and FMLA claims against the Department and the Board; she does not assert such claims against the Board Members. By contrast, Kincaid's § 1983 claims are asserted against the Department, the Board, and the Board Members in their official and individual capacities.

B.  Other Claims Subject to Dismissal.

With several claims disposed of on sovereign immunity grounds, the remaining claims are the defamation, intentional infliction of emotional distress, and § 1983 claims against the Board Members in their individual capacities, and the Title VII claims against the Department and the Board.

I find that Kincaid has failed to properly assert any of her claims against the Board Members in their individual capacities.  As previously stated, Kincaid fails to allege facts to support a claim of intentional infliction of emotional distress against any of the defendants.  Further, Kincaid fails to state a claim of defamation against the Board Members.  In order to state a claim of defamation under Virginia law, Kincaid must allege "(1) publication of (2) an actionable statement with (3) the requisite intent." *Tharpe v. Saunders*, 737 S.E.2d 890, 892 (Va. 2013) (internal quotation marks and citation omitted).  In order for the statement "to be actionable, the statement must be both false and defamatory." *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005).  From the Complaint, it is clear that Kincaid attributes all of the allegedly defamatory statements against her to defendant Anderson, who she claims made such statements to the Board with the aim of getting her fired. The Complaint does not allege that any Board member made a single statement, much

less a defamatory one.[9]  For this reason alone, the facts alleged fail to state a claim for defamation against the Board Members.

Further, I find that the Complaint fails to state a § 1983 due process claim against the Board Members in their individual capacities.  "[I]n order to claim entitlement to the protections of the due process clause . . . a plaintiff must first show that he has a constitutionally protected 'liberty' or 'property' interest, and that he has been 'deprived' of that protected interest by some form of 'state action.'"  *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988) (citations omitted).  Kincaid claims that she had a protected property interest in her continued employment as social work supervisor, and a protected liberty interest in her "good name, reputation, honor and/or integrity."  (Compl. ¶ 139, ECF No. 43.) She contends that her demotion by the Board Members on the basis of false charges, without notice or the opportunity to be heard, violated her due process rights.

---

[9]  The Complaint states that the Board Members defamed Kincaid because they "took action" based on Anderson's statements, thus "affirming, ratifying and adopting them as their own."  (Compl. ¶ 123, ECF No. 43.)  The very premise of a defamation action, however, is that others will listen to — and act on — defamatory statements about an individual, thus inflicting "damage to [the victim's] reputation and standing in the community."  *Gazette, Inc. v. Harris*, 325 S.E.2d 713, 723 (Va. 1985).  Indeed, the elements of defamation require that the statement was published to third parties and that such statement harmed the plaintiffs reputation, in order to punish the speaker.  *Hyland v. Raytheon Tech. Servs. Co.*, 670 S.E.2d 746, 750 (Va. 2009) ("[A] private individual asserting a claim of defamation first must show that a defendant has published a false factual statement that concerns and harms the plaintiff or the plaintiffs reputation.").  To hold third parties liable solely for reacting to false statements would thus contradict the fundamental logic of defamation claims.

-12-

In order to state a § 1983 claim for deprivation of property without due process, a plaintiff must show that she has a constitutionally protected property interest, and that she has been deprived of that interest by state action. *Stone*, 855 F.2d at 172. "Whether a plaintiff has a protectable property interest under the Due Process Clause turns upon the plaintiff's property rights under state law." *Foreman v. Griffith*, 81 F. App'x 432, 436 (4th Cir. 2003) (unpublished); see also *Davis v. Rao*, 982 F. Supp. 2d 683, 688 (E.D. Va. 2013) ("Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." (internal quotation marks and citation omitted).) Kincaid has not set forth any facts indicating that she was entitled to continued employment in a particular position at the Department, aside from her assertion that she is a governmental employee. Under Virginia law, however, there is a "strong presumption . . . that employment relationships are at-will." *Id*. 690 (citing *Cty. of Giles v. Wines*, 546 S.E.2d 721, 723 (Va. 2001)). At-will governmental employees in Virginia have "no property right [in their continued employment] which is protected by the federal constitution and, hence, [their] claims under 42 U.S.C. § 1983 [are] not legally cognizable." *Davis*, 982 F. Supp. 2d at 690 (quoting *Wines*, 546 S.E.2d at 725). Kincaid has not made any factual

allegations overcoming this presumption, and thus fails to state a due process claim based on her property interest in continued employment.

As to Kincaid's liberty interest, the Fourteenth Amendment protects "(1) the liberty to engage in any of the common occupations of life, and (2) the right to due process [w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 646 (4th Cir. 2007) (internal quotation marks and citations omitted). In order to state a claim that her liberty interests were violated, a public employee must allege that the charges against her: (1) placed a stigma on her reputation; (2) were made public by the employer; (3) were made in conjunction with her termination or demotion; and (4) were false. *Stone*, 855 F.2d at 172 n.5.

Kincaid claims that her liberty interests were violated because the members of the Board demoted her based on "false and defamatory statements [which] denigrated Mrs. Kincaid's competence as a professional and impugned her professional reputation." (Compl. ¶ 137, ECF No. 43.). However, her due process claim suffers from the same defect as her defamation claim. It was not the Board Members who allegedly made false charges against Kincaid, it was her supervisor, Anderson. Even assuming for the sake of argument that Anderson's actions constituted an unconstitutional tort against Kincaid, the members of the Board

"may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 676. Rather, the "plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id. See also Evans v. Chalmers*, 703 F.3d 636, 662 (4th Cir. 2012) (Wilkinson, J., concurring) (admonishing plaintiffs reliance on supervisory liability where complaint against government officials "[sought] to sweep in everyone and everything, heedless of any actual indications of individual malfeasance that would justify the personal burdens that litigation can impose").[10]

Further, Kincaid does not allege that the Board Members made public the charges against her or the reasons for her demotion. Because "[t]he liberty interest protected is not continued employment but the opportunity to 'clear [one's] name against unfounded charges,'" Kincaid's failure to allege a public airing of the charges provides another fatal blow to her due process claim. *Earley v. Marion*, 540 F. Supp. 2d 680, 689 (W.D. Va. 2008) (quoting *Johnson v. Morris*, 903 F.2d

---

[10]  Even if I were to find that Kincaid's due process rights were violated, I would find that the Board Members are entitled to qualified immunity. "[T]o defeat defendants' claim of qualified immunity plaintiff must further show that defendants violated clearly established 'constitutional rights of which a reasonable person would have known.'" *Fields*, 566 F.3d at 389 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Here, Kincaid has simply not alleged any facts showing that the Board Members knew of Anderson's purportedly malevolent intentions or that their actions were not in good faith, much less that they violated established constitutional rights.

996, 999 (4th Cir. 1990)).[11]  For these reasons, the claims against the Board

Members in their individual capacities must be dismissed in their entirety.

## C. Title VII Claims.

The sole remaining claims are Kincaid's Title VII claims of discrimination,

harassment, and retaliation against the Department and the Board, as contained in

Counts I and II of the Complaint.  Title VII makes it "an unlawful employment

practice for an employer . . . to discriminate against any individual with respect to

[her] compensation, terms, conditions, or privileges of employment, because of

such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-

2(a)(1).  To state a Title VII claim, "a plaintiff is not required to plead facts that

constitute a prima facie case."  *Coleman*, 626 F.3d at 190 (citing *Swierkiewicz v.*

*Sorema NA.*, 534 U.S. 506, 510-15 (2002)).  Nevertheless, a complaint's

"'[f]actual allegations must be enough to raise a right to relief above the

speculative level.'"  *Id*. (quoting *Twombly*, 550 U.S. at 555).  There are two

alternative methods of stating a Title VII claim for discrimination: the mixed-

---

[11] Moreover, "defamation alone, without a connection to 'tangible interests such as employment,' does not invoke the due process clause."  *Earley*, 540 F. Supp. 2d at 688 (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)).  Rather, in order to implicate a due process liberty interest, there must have been "some damage to [the plaintiff's] employment status" as a result of the defamation.  *Earley*, 540 F. Supp. 2d at 689 (citing *Johnson v. Morris*, 903 F.2d 996, 999 (4th Cir.l990)).  Although Kincaid was demoted as a result of the alleged defamatory statements, she was quickly reinstated and remains employed as social work supervisor.  Because she remains employed, her position is unlike that of a discharged employee, whose "opportunity for other gainful employment is thwarted by the publication of the reasons for his discharge."  *Johnson*, 903 F.2d at 999 (internal quotation marks and citation omitted).

motive framework, in which "it is sufficient for the individual to demonstrate that the employer was motivated to take the adverse employment action by both permissible and forbidden reasons"; or the pretext framework, "under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284, 285 (4th Cir.2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973)). Under either theory, "'[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.'" *Hill,* 354 F.3d at 286 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000)).

Kincaid claims that she was discriminated against on account of her sex and religion by her supervisor, Anderson, through his prejudicial comments, efforts to sabotage her, and his fabrication of complaints against her in order to get her fired. She claims that she complained repeatedly to Anderson in an effort to stop his behavior, but to no avail. Kincaid asserts that the Department and Board took adverse action against her by demoting her based on Anderson's false accusations. These factual allegations are sufficient to state a claim for discrimination under Title VII against the Department. Kincaid has alleged she is part of a protected

class based on her gender and her religion, and that she has experienced numerous acts of discrimination on the basis of her membership in these protected classes at the hands of her supervisor, Anderson. Further, she has alleged that she suffered adverse employment actions, as Anderson recommended her termination to the Board based on his impermissible prejudices, and the Board ultimately demoted Kincaid.

The defendants argue that the Board was not aware of Anderson's prior behavior towards Kincaid or that his accusations regarding her competence and professionalism were false. Because the Board did not demote Kincaid on the basis of animus with regard to protected traits, but rather based on allegations about her work performance, the defendants contend that the plaintiff has not alleged that the "protected trait . . . actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." *Hill*, 354 F.3d at 286 (internal quotation marks and alterations omitted). "[S]tatements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself, [cannot] suffice to satisfy the plaintiffs burden" of proving discrimination. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring). Therefore, the defendants claim that the Board's independent decision to demote Kincaid cannot be causally connected to Anderson's alleged impermissible prejudices.

-18-

However, the defendants' argument fails to recognize that, according to the Complaint, the Board did not make the decision to demote Kincaid in isolation, but rather based its decision entirely on Anderson's representations about Kincaid's work product. For purposes of Title VII, "the person allegedly acting pursuant to a discriminatory animus need not be the 'formal decisionmaker' to impose liability upon an employer for an adverse employment action, so long as the plaintiff presents sufficient evidence to establish that the subordinate was the one 'principally responsible' for, or the 'actual decisionmaker' behind, the action." *Hill*, 354 F.3d at 288-89 (quoting *Reeves*, 530 U.S. at 151-52). Although it is premature to say that Anderson was the "actual decisionmaker" behind Kincaid's demotion, Kincaid has alleged sufficient facts in support of this notion to survive the Motion to Dismiss.

Further, Kincaid has alleged that she was subjected to ongoing harassment on the basis of her gender and religion. The language of Title VII "is not limited to economic or tangible discrimination," but also includes "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21(1993) (internal quotation marks and citations omitted). A hostile environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

environment." *Id.* (internal quotation marks and citations omitted). To prevail on a Title VII claim of a hostile work environment, "a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiffs [gender or religion]; (3) which is sufficiently severe or pervasive to alter the plaintiffs conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Boyer-Liberto v. Fontainebleau Corp.*, No. 13-1473, 2015 WL 2116849, at *9 (4th Cir. May 7, 2015) (internal quotation marks and citations omitted). "Whether the environment is objectively hostile or abusive is judged from the perspective of a reasonable person in the plaintiffs position," and may be determined based on "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotation marks and citations omitted). Further, "the status of the harasser may be a significant factor," *id.* at *10, because "a supervisor's power and authority invests his or her harassing conduct with a particular threatening character." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 763 (1998).

Kincaid alleges that Anderson made on-going offensive comments to her on the basis of her gender and religion, that he actively sabotaged her by denying her resources needed to do her job and undercutting her authority over subordinates,

and that he fabricated charges against her in an effort to get her terminated. Further, Kincaid was allegedly demoted by the Board as the result of Anderson's harassment, and "[t]he employer is strictly liable for the supervisor's harassing behavior if it 'culminates in a tangible employment action.'" *Boyer-Liberto*, 2015 WL 2116849, at *10 (quoting *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013)). These alleged facts are sufficient to state a claim for harassment in violation of Title VII.

Finally, Title VII prohibits employers from "'discriminating against any of their employees because the employees have opposed any practice made an unlawful employment practice by Title VII.'" *Coleman*, 626 F.3d at 190 (quoting 42 U.S.C. § 2000e-3(a) (alterations omitted)). The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action. *Id*. The facts alleged in the Complaint satisfy these factors.

In sum, I find that Kincaid has sufficiently alleged her Title VII discrimination, harassment, and retaliation claims against the Department and the Board to survive the Motion to Dismiss.

*****

It is puzzling that plaintiff's counsel would load the Complaint with such marginal legal claims as stated here, when they have a validly stated cause of action that if proved would provide their client with all of the relief possible. Filling a lawsuit with legally unmeritorious claims predictably produces a motion to dismiss, and requires the court and opposing counsel to expend time and effort unnecessarily, delaying final resolution of the plaintiff's action, and at the expense of other deserving cases.

III.

For the reasons stated, it is **ORDERED** as follows:

1.  Defendants' Motion to Dismiss (ECF No. 44) is GRANTED IN PART AND DENIED IN PART;

2.  The Motion to Dismiss by the Department, the Board, and the Board Members in their official capacities is GRANTED as to Counts III (Defamation), Count IV (Intentional Infliction of Emotional Harm); Counts V (Due Process Violation: Property Interest), VI (Due Process Violation: Liberty Interest); Count VII (Municipal Liability); and Count VIII (Violation of the Family and Medical Leave Act) and said Counts are DISMISSED with prejudice as they pertain to said defendants;

3.    The Motion to Dismiss by the Board Members in their individual capacities is GRANTED as to Counts III (Defamation), Count IV (Intentional Infliction of Emotional Harm); Counts V (Due Process Violation: Property Interest), and VI (Due Process Violation: Liberty Interest), and said Counts are DISMISSED without prejudice as they pertain to said defendants;

4.    The Motion to Dismiss by the Department and the Board is DENIED as to Counts I (Discrimination and Retaliation) and II (Harassment);

5.    Defendants Harry Ferguson, Roger Brown, Laurel Rasnick, Bill Hale and Rebecca Dye are DISMISSED as parties to this action.  The Clerk is directed to terminate them on the docket as parties; and

6.    Plaintiff's Request for Hearing as to Motion to Dismiss (ECF No. 54) is DENIED.


ENTER:  June 8, 2015

/s/  James P. Jones
United States District Judge