# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **PAM KINCAID,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:14CV00027 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **JAMES W. ANDERSON, ET AL.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendants. | ) | |

*Melvin E. Williams, Mel Williams PLC, Roanoke, Virginia, for Plaintiff; Edward G. Stout, Curcio & Stout, PC, Bristol, Virginia, for Defendant James W. Anderson; Henry S. Keuling-Stout, Keuling-Stout, P.C., Big Stone Gap, Virginia, and A. Benton Chafin, Jr., Chafin Law Firm, P.C., Lebanon, Virginia, for Defendants Russell County (Virginia) Department of Social Services and Board of the Russell County (Virginia) Department of Social Services.*

In this employment discrimination case filed by a governmental employee against her supervisor, the agency, and the agency's board, the defendants have moved for summary judgment. The plaintiff opposes summary judgment on the ground that material disputes of fact exist precluding such judgment. The motions have been briefed, argued, and are ripe for decision. For the reasons explained below, I will enter summary judgment on behalf of the defendants.

I.

The plaintiff, Pam Kincaid, was hired by the Russell County, Virginia, Department of Social Services ("RCDSS") as a child protective services ("CPS")

worker in June of 2005. In October of 2011, she was promoted to the position of a CPS supervisor. Because she was in a new job with increased responsibility, Kincaid was placed on probationary status during her first year as a CPS supervisor. In January of 2012, RCDSS hired defendant James W. Anderson as its new director. Like the plaintiff, Anderson was put on probationary status during his first year as director. Anderson was tasked with addressing problems that were occurring within the agency, which was described to him by the RCDSS citizen board (the "Board") as being "highly dysfunctional." While Anderson was responsible for managing RCDSS, he was not empowered to hire or fire employees, but could make recommendations to the Board regarding the employment of RCDSS personnel.

Kincaid and Anderson did not have a good working relationship. In the response to the agency's Motion for Summary Judgment,[1] the plaintiff's attorney lists more than 35 specific interactions between Kincaid and Anderson that the lawyer claims show that she was harassed and discriminated against. For example,[2] it is alleged that in January of 2012, Anderson accused her of illegally

---

[1] RCDSS and its Board have filed a joint Motion for Summary Judgment and take identical positions in the case.

[2] While there are alleged to be numerous incidents where Anderson criticized Kincaid's work, those incidents in sum do not provide evidence of harassment or discrimination. Accordingly, while I will recount the most relevant of these allegations, I will not attempt to list every such incident that Kincaid mentions in the pleadings. Moreover, the factual allegations submitted in response to the defendants' summary

"padding" a RCDSS's employee's time, and criticized her use of special duty leave, which Anderson said was both prohibited by RCDSS and illegal. This accusation occurred during a supervisory staff meeting. That same month, Anderson "verbally chastised" the plaintiff for not informing the front desk attendant that she would be taking an extended lunch. Anderson subsequently told the plaintiff that he had been hired for the purpose of firing people whom the Board did not like, and that the Board did not like the plaintiff.

At another staff meeting, it is claimed that Anderson criticized Kincaid over her purported noncompliance with RCDSS policies. He would later comment to the plaintiff that he was going to turn her into a "good southern woman" and that she had previously worked in a "cat house." He also repeatedly used the phrase "spoken like a true Catholic" in reference to the plaintiff, and once asked how she could walk while wearing "hooker heels."[3]

The plaintiff's attorney also complains about items that Anderson posted to his personal Facebook account, which it is surmised were directed toward her.

---

judgment motions were not made under oath. No affidavit, declaration, or deposition of the plaintiff has been filed. Her lawyer's assertions of facts in opposition to the motions for summary judgment rely solely on the plaintiff's Answers to Interrogatories, but those answers were not made under oath, as required by Federal Rule of Civil Procedure 33(b)(3).

[3] In his affidavit in support of his Motion for Summary Judgment, Anderson denies that many of the alleged incidents occurred, and explains others. For example, he did admit the "good southern woman" comment, which he characterized as a humorous remark, made in reference to Kincaid's rudeness and lack of "common courtesy." (Anderson Aff. 5, Jan. 13, 2016, ECF No. 59-1.)

Specifically, he cites to one instance where Anderson quoted Matthew 6:24, a Bible verse that discusses the fact that no man can serve two masters. Anderson supposedly told the plaintiff that this post referred to her relationship with Carol Brunty, the prior director of RCDSS, who still worked for the agency. The plaintiff inferred that this post was directing her to not speak to Brunty. Another Facebook post from Anderson indicated that he still had "a few Darth Maul's left to conquer" at RCDSS.[4]

The plaintiff's attorney also claims that Anderson criticized Kincaid's speech, made negative insinuations toward her in intra-office emails, and encouraged coworkers to file complaints against her.

In his affidavit in support of his Motion for Summary Judgment, Anderson asserts that the plaintiff was a problematic employee of RCDSS. He characterizes her as being argumentative, impulsive, and abrupt, and further says that she failed to follow agency guidelines. Anderson supports his claims with a number of specific examples. Notably, Anderson cites to a Quality Management Review ("QMR") that was performed to assess RCDSS. As part of this QMR, numerous RCDSS staff and other relevant community members (such as court employees and members of law enforcement) were surveyed to assess the agency. Anderson

---

[4] The plaintiff's attorney explains that Darth Maul is a villainous Sith Lord from the movie Star Wars, The Phantom Menace.

argues that the QMR results confirm that the plaintiff was a subpar CPS supervisor, and that criticism of her was warranted.[5]

On or around February 21, 2012, two RCDSS employees reported to Anderson that the plaintiff had lied about CPS cases while under oath. A criminal investigation of the plaintiff ensued, but that investigation did not reveal that the plaintiff had engaged in any wrongdoing.

The plaintiff took approved medical leave from May 15, 2012, until May 31, 2012.

On May 15, 2012, the Board held a regular meeting. At this meeting, Anderson recommended that the plaintiff's employment be terminated. It is alleged that some Board members were surprised by this recommendation because Anderson had previously reported a positive relationship with the plaintiff.

Anderson's recommendation to the Board was prompted, at least in part, by a verbal confrontation between Kinciad and a local attorney.[6] Anderson also said

---

[5] Anderson specifically cites to language from that report that indicates that the plaintiff was ineffective, had few management skills, allowed children to be inappropriately removed from their homes, and was often inaccessible to CPS staff. He further notes the QMR's finding that there was an unhealthy culture at RCDSS, which he claims was caused, at least in part, by the plaintiff.

[6] The parties disagree as to how Anderson described this confrontation to the Board. Anderson says that he told the Board that the attorney had publically "cussed out" the plaintiff. The plaintiff's attorney maintains that Anderson told the Board that it was the plaintiff who had "cussed out" the attorney. The plaintiff was not present during this meeting and failed to include any evidence in the summary judgment record that supports her version of these events.

that multiple employees had left RCDSS because of the plaintiff, and that several citizens and local attorneys had complained about her conduct. In response to Anderson's allegations, the Board discussed the issues that he had raised, and ultimately decided to demote the plaintiff from her supervisor position to her original position as a CPS worker. The Board appointed another female to perform the supervisory duties on an interim basis.

After returning from her medical leave, the plaintiff requested a meeting with the Board to discuss her demotion. She ultimately met with the Board on July 17, 2012, during one of its regular meetings. After discussing the issue, the Board reinstated the plaintiff to her supervisory position by a vote of three to one.

Anderson resigned in September of 2013. The plaintiff subsequently filed the present action in this court on May 14, 2014.

In an earlier ruling, I dismissed all of the claims against RCDSS and the Board that were based on the Family Medical Leave Act, state law, or alleged violations of the plaintiff's due process rights. (Op. & Order, June 8, 2015, ECF No. 51). Accordingly, the only claims that remain pending against RCDSS and the Board are for alleged violations of Title VII. The state law and due process claims continue against Anderson.

II.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To raise a genuine issue of material fact sufficient to avoid summary judgment, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is not a disfavored procedural shortcut, but an important mechanism for weeding out claims and defenses that have no factual basis. *Id.* at 327. It is the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).

III.

    A.    Claims of Gender and Religious Based Discrimination.

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The plaintiff bares the initial burden of proving that Title VII discrimination took place. *See Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227 (4th Cir. 1998). The plaintiff alleges that the defendants violated Title VII because her demotion was motivated by both gender and religious based discriminatory motives.

    1.    Gender Discrimination.

To establish a prima facie case of gender discrimination, the plaintiff must either provide direct evidence that her demotion was motivated by a discriminatory motive or satisfy the four-part *McDonnell Douglas* framework. *Id*. at 1227-28 (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)). I find that the plaintiff has not provided any direct evidence of a discriminatory motive. The plaintiff attempts to prove discriminatory intent by citing to Anderson's comments regarding "hooker heels," turning her into a "good southern woman," and working in a "cat house." There is no question that comments like these are crass and

misogynistic. However, these isolated comments, which were uttered over the course of several months and unrelated to the demotion, do not show that the demotion was predicated on a discriminatory intent.

In order for her claim to succeed under *McDonnell Douglas*, the plaintiff must show (1) that she is a member of a protected class; (2) that she was qualified for her job and that her job performance was satisfactory; (3) that, in spite of her qualifications and performance, she suffered an adverse employment action; and (4) that her supervisory position remained open to or was filled by similarly qualified applicants outside of the protected class. *See id.* at 1228; *Harris v. Home Sales Co.*, 499 F. App'x 285, 292 (4th Cir. 2012) (unpublished).

As a woman, the plaintiff is a member of a protected class. However, the plaintiff has provided no evidence that her job performance was satisfactory. She attempts to prove this by citing to her own unsworn interrogatory responses; these responses simply say that, at the time of her demotion, she had worked for RCDSS in a non-supervisory capacity for seven years. This is not enough to satisfy the second prong of *McDonnell Douglas*. On the other hand, the defendants have submitted sworn affidavits that state specific reasons why her performance was called into question during the May 15 Board meeting. Those reasons included a verbal confrontation between the plaintiff and a local attorney, complaints from both attorneys and private citizens, and statements from former RCDSS employees

that they had left their employment because of the plaintiff. The concerns regarding her performance were especially relevant given that she was relatively new to the supervisory position.

When confronted with these concerns, the Board chose to demote the plaintiff, not terminate her. Another female was chosen to fill the plaintiff's supervisory role, thus negating the fourth prong of *McDonnell Douglas*. Approximately two months after the demotion, the plaintiff was returned to the supervisory position.

The totality of this situation makes clear that the plaintiff cannot satisfy the second or fourth prongs laid out in *McDonnell Douglas*. Instead, the record supports the defendants' assertion that they acted based on a non-discriminatory motive. Accordingly, the plaintiff has not set forth a prima facie claim for gender discrimination.

2. Religious Discrimination.

The analysis for the plaintiff's religious based claim is substantially the same as the gender discrimination analysis stated above. However, when assessing claims that an employee was discriminated against because her religion does not match her supervisor's, many courts have adopted a modified test for determining whether the plaintiff has plead a prima facie case. *See Scott v. Montgomery Cty. Sch. Bd.*, 963 F. Supp. 2d 544, 553 (W.D. Va. 2013); *Shapolia v. Los Alamos Nat'l*

*Lab.*, 992 F.2d 1033, 1037-38 (10th Cir. 1993). This test requires the plaintiff to show (1) that she was subjected to some adverse employment action; (2) that, at the time the action was taken, her job performance was satisfactory; and (3) some additional evidence to support the inference that the adverse action was taken because of a discriminatory motive based on the employee's failure to follow her superior's religious beliefs. *See id*. This approach has been lauded as being superior to the *McDonnel Douglas* framework when the plaintiff's religion is not necessarily a minority or protected one, but is nonetheless different from her superior's religion.[7] *See id*.

    I find this framework appropriate here, but the plaintiff's religious discrimination claim must nonetheless fail for the same reason that her gender discrimination claim failed. Simply put, the plaintiff has not introduced any evidence showing that her work performance was satisfactory, nor has she provided a reason to believe that her demotion was because of her religion or perceived religion. While she has alleged that Anderson made a handful of questionable comments regarding religion, this is not enough to show that Anderson made the negative recommendation because of her religion or that the Board demoted her for that reason.

---

[7] Anderson is currently a Baptist, although raised as a Catholic. The plaintiff is a Pentecostal but raised as a Catholic.

-11-

Accordingly, the plaintiff has failed to make a prima facie case of religious discrimination, so summary judgment must be granted in favor of the defendants as to her discrimination claims.

      B.     Claims of Gender and Religious Based Retaliation.

Title VII also includes an anti-retaliation provision to prevent employers from retaliating against employees who seek enforcement of Title VII's guarantees. *See DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015). In order to establish a prima facie Title VII retaliation claim, the plaintiff must demonstrate (1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal link between the two events. *Id*.

The plaintiff says that there were various instances where Anderson reprimanded her publically, and that she later complained to him that his conduct had embarrassed her. She argues that these interactions constituted protected activity. However the vast majority of these interactions did not implicate Title VII issues, but instead concerned some perceived work-related problem. The only specific instance set forth by the plaintiff that might implicate Title VII is one from January or February of 2012, during which Anderson told her that he would turn her into a "good southern woman," and she later complained to him about the comment. If this activity was protected, the plaintiff has certainly not set forth any

causal link between it and her May 15 demotion. This isolated interaction is not enough for a Title VII retaliation claim, so summary judgment must be granted in favor of the defendants as to that claim.

> C. Claims of Harassment on Account of Gender and Religion.

To state a hostile work environment or harassment claim, the plaintiff must set forth a prima facie case that (1) she experienced unwelcome harassment; (2) the harassment was based on her gender or religion; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability to the employer. *See Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). The comments regarding "hooker heels," turning the plaintiff into a "good southern woman," working at a "cathouse," and perhaps even speaking "like a good Catholic" constitute unwelcome harassment based on gender or religion.

In order for the harassment to have been severe or pervasive enough to alter the conditions of the plaintiff's employment, the plaintiff must show both that she subjectively perceived her environment to be abusive, and that a reasonable person would have objectively found the environment to be hostile. *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). "[T]o be actionable, the harassing 'conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment.'" *Id*. (quoting *Faragher v. City of Boca Raton,* 524

-13-

U.S. 775, 788 (1998)) (alterations in original). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher,* 524 U.S. at 788 (internal quotation marks and citation omitted).

The Fourth Circuit has said that rude treatment by supervisors is not enough to sustain a claim for a hostile work environment. *See Bennett v. CSX Transp., Inc.,* 552 F. App'x 222, 227 (4th Cir. 2014) (unpublished). "It is not the province of Title VII to eliminate every instance of rudeness or insensitivity." *Id*. "Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life." *Sunbelt Rentals, Inc.,* 521 F.3d at 315.

Notably, "a routine difference of opinion and personality conflict with [one's] supervisor" is not enough to clear the high bar that must be satisfied for purposes of the severe or pervasive test. *Hawkins v. PepsiCo, Inc.,* 203 F.3d 274, 276 (4th Cir. 2000); *see also Sunbelt Rentals, Inc.*, 521 F.3d at 316.

The great majority of the plaintiff's harassment claim hinges on the kind of personality conflicts that are categorically deficient for purposes of Title VII. She alleges only a handful of comments, mentioned above, that implicate gender or religion. I do not believe that these relatively infrequent, isolated comments can

-14-

Case 1:14-cv-00027-JPJ-PMS   Document 96   Filed 03/22/16   Page 14 of 20   Pageid#: 916

clear the high bar that must be met in order to show severe or pervasive harassment. While Anderson's alleged comments may have been tactless, a handful of off-colored remarks are not enough to show Title VII harassment. Accordingly, I do not believe that the plaintiff can show severe or pervasive harassment, so summary judgment must be granted in favor of the defendants.

D. State Law Claim for Defamation.

In Virginia, the law of defamation regarding a statement made by a non-media defendant toward a private individual is well settled.

> At common law, defamatory words that prejudice a person in his or her profession or trade are actionable as defamation per se. A defamatory statement may be made by inference, implication or insinuation. However. . . speech which does not contain a provably false factual connotation, or statements which cannot reasonably be interpreted as stating actual facts about a person cannot form the basis of a common law defamation action.

*Fuste v. Riverside Healthcare Ass'n, Inc.*, 575 S.E.2d 858, 861 (Va. 2003) (internal citations, emendation, and quotation marks omitted). Thus, the plaintiff must show that Anderson uttered a false statement, and must provide some basis for believing that the statement was false. *See Gazette, Inc. v. Harris*, 325 S.E.2d 713, 725 (Va. 1985); *Union of Needletrades v. Jones*, 603 S.E.2d 920, 924 (Va. 2004) ("[I]n every defamation action the plaintiff's initial burden is to produce sufficient evidence to show that the allegedly defamatory statement was false.") "If the plaintiff does not establish the falsity of the statement by a preponderance of the

evidence in his case-in-chief, he has not met this threshold burden, and the trial court should strike the evidence and grant summary judgment to the defendant." *Id.* at 924-25.

The record contains no evidence that a false statement was made about the plaintiff. She alleges that Anderson falsely accused her of cursing at a local attorney. However, the plaintiff was not present during the May 15 meeting where Anderson supposedly made this statement. At oral argument, the plaintiff's counsel claimed that her allegation derived from statements that were made to her by Board members. Unfortunately, the record contains no evidence from any Board member, or even from the plaintiff herself, that supports this claim.

Conversely, Anderson has submitted a sworn affidavit that supports his position. He claims to have said that the local attorney cursed toward the plaintiff. The Board's chairman has submitted her own affidavit that expressly sides with Anderson.

To the extent that the plaintiff argues that other statements made during the May 15 meeting were false, she has provided no evidence in the record showing the falsity of those statements. With no evidence supporting the plaintiff's allegation, I must enter summary judgment in favor of Anderson.[8]

---

[8] Anderson also contends that the defamation claim is barred by the Virginia statute of limitations. In view of my ruling, it is not necessary for me to consider this argument.

E. State Law Claim for Intentional Infliction of Emotional Distress.

Under Virginia law, the tort of intentional infliction of emotional distress is not favored. *See Supervalu, Inc. v. Johnson*, 666 S.E.2d 335, 343 (Va. 2008). This is because there are inherent problems with proving an injury of the mind that has no accompanying physical injury.

> In order to recover on a claim of intentional infliction of emotional distress, a plaintiff must satisfy four elements of proof. The plaintiff must show that 1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional distress was severe.

*Id*.

I do not believe that any reasonable finder of fact could find that Anderson's conduct was outrageous, intolerable, or resulted in severe emotional distress. The plaintiff did not get along with Anderson, but disagreements and bickering do not amount to the level of outrageousness necessary for intentional infliction of emotional distress. As such, summary judgment must be entered in favor of Anderson as to this claim.

F. Claim for Due Process Violation (Property Interest).

The plaintiff claims that Anderson violated her due process rights, as guaranteed by the Fifth and Fourteenth Amendments, by depriving her of the property interest she held in her employment. In Virginia employment cases, there is a strong presumption that employment relationships are at will. *See Cty. of Giles*

-17-

*v. Wines*, 546 S.E.2d 721, 723 (Va. 2001). This presumption is essentially codified in section 63.1-61 of the Virginia Code, which provides that employees of a local public welfare department serve at the pleasure of the local appointing authority, subject only to the provisions of the merit plan.

The plaintiff cites to *Prince v. Bridges*, 537 F.2d 1269 (4th Cir. 1976), to stand for the proposition that the grievance procedure established by the merit plan created a property interest in her employment. *See id*. at 1271-72 ("Any 'property' interest [the plaintiff] would have in continued public employment would necessarily arise out of the statutory protection provided by the merit plan.") She argues that the merit plan entitled her to a pre-demotion hearing, and that failure to provide such a hearing was a due process violation. The plaintiff has not cited to the relevant merit plan, but instead relies entirely on the language from *Prince*.

Virginia Code section 63.2-100 provides that the merit plan consists of the regulations adopted by the Virginia Board of Social Services ("VBSS"). The VBSS's guidance on discipline and employment makes clear that probationary employees are not entitled to use the grievance procedure. *See* Virginia Board of Social Services Administrative/Human Resources Manual for Local Departments of Social Services, Chapter 7, pp. 136, 140 (accessed at https://www.dss.virginia.gov/files/division/dhrm/manual/chapter_07.pdf).

Because the plaintiff was a probationary employee to an at-will position, the grievance procedure did not confer any property interest in her employment. Summary judgment on this claim is therefore appropriate.

> G. Claim for Due Process Violation (Liberty Interest).

Lastly, the plaintiff claims that her due process rights were violated when Anderson espoused false allegations to the Board, thereby hurting her good name and employability.

False allegations made by a public employer can give rise to due process concerns when the employer has effectively deprived the employee of her "freedom to take advantage of other employment opportunities." *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 573 (1972); *see also Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 645 (4th Cir. 2007). "For this reason, a Fourteenth Amendment 'liberty interest is implicated by public announcement of reasons for an employee's discharge.'" *Id.* at 645-46 (quoting *Johnson v. Morris,* 903 F.2d 996, 999 (4th Cir. 1990)). In order for the plaintiff to successfully show that her liberty interests were violated, she must show that the defendants made statements that (1) placed a stigma on her reputation; (2) were made public; (3) were made in conjunction with her demotion; and (4) were false. *Id*. at 646; *Stone v. Univ. of Md. Med. Sys. Corp.,* 855 F.2d 167, 172 n.5 (4th Cir. 1988).

Again, the record contains no evidence that Anderson made any false statements. Even if he had, the record also provides no basis for believing that such statements were made public. As such, summary judgment is appropriate to this claim.

IV.

For the foregoing reasons, it is **ORDERED** that defendants' Motions for Summary Judgment (ECF Nos. 58 & 74) are GRANTED. A separate final judgment will be entered forthwith.

ENTER: March 22, 2016

/s/ James P. Jones
United States District Judge